May it please the Court, Pinesh Jha for the State of Oregon. We ask the Court to reverse the District Court's grant of habeas relief in this case. The District Court should be reversed for failing to accord sufficient deference to both the trial and post-conviction counsel in this case, as required by Strickland as to both counsel. At issue is a procedurally defaulted claim. The petitioner's trial counsel should have objected to testimony the petitioner views as an impermissible comment on the victim's credibility, of the sort that the Oregon Supreme Court post-trial concluded would have been admissible in the Southard case. In our view, the simplest analysis in this case is that the state post-conviction counsel can't have performed efficiently by omitting this claim at the state post-conviction proceedings, because at the time of that state post-conviction proceedings, the Oregon Court of Appeals had already rejected a similar claim in the Umberger case. Petitioner's post-conviction case occurred in 2012 to 2013. The Umberger case was decided in 2009. In that case, the Court of Appeals had expressly rejected the argument that the petitioner raises here. In that case, the Court held that given the state of the law prior to Southard, petitioner's trial counsel did not fail to exercise reasonable professional skill in judgment for failing to raise an objection to a testimony similar to the testimony here. In our view, the Strickland standard does not require post-conviction counsel to raise an objection that, or rather to raise a claim that is foreclosed by a state Court of Appeals case that would be binding on the state post-conviction court. It can't be unreasonable performance to decline to raise that claim. And if that's true, then there's no cause in prejudice under Martinez, and this procedurally defaulted claim has to fail. What about the claim that apparently counsel at the time were raising these objections because there was an understanding among the defense counsel at the bar that that case wasn't well decided and was likely to be overturned by the Oregon Supreme Court? So I have a number of responses to that. I think sort of the highest level response to that is that that addresses the reasonableness of trial counsel. It doesn't address the reasonableness of post-conviction counsel. There's no affidavit saying that in 2012 and 2013 all post-conviction counsel were raising this claim. So, you know, even if it may be true, looking at high end, even if trial counsel at the time of trial thought there was a viable claim here, that doesn't resolve whether trial counsel would have been ineffective for failing to raise it and so clearly ineffective that post-conviction counsel was required by Strickland to raise this claim even when Umberger had decided against it. Well, okay, I guess I didn't quite follow your argument on that point. So you're saying even though this is a federal claim, it's a Sixth Amendment claim, that if a state court says we're not sympathetic to this claim that that absolves post-conviction counsel who one of their duties, state post-conviction counsel, is to exhaust federal claims so that a federal court like ours can eventually look at that. You're just saying that whenever an intermediate state appellate court weighs in on what the meaning of the Constitution is that post-conviction counsel can just say, oh, well, obviously I'm done. I don't need to bother. That seems wrong to me, I guess, as that's why I'm pausing there. So I think post-conviction counsel has to assess the relative merits of the various claims at issue, and here post-conviction counsel raised a number of other claims. And, you know, one of the duties of post-conviction counsel is, yes, to exhaust claims for later federal habeas relief, but also post-conviction counsel is to try and obtain relief there at post-conviction. And if there are better claims in post-conviction, in post-conviction counsel's view, that will attain speedier relief and more complete relief or more likely relief, it is reasonable under Strickland for counsel to conclude that those claims are better raised than a claim that will be foreclosed that will require waiting all the way until federal habeas relief for a possibility of relief. Let me ask you just a little bit different type of question. There is no federal case that would suggest how this case would come out under federal law, is there? There's no binding precedent how this would come out under federal law. And by this, Your Honor, you mean? By the allowance of this testimony. I mean, what I'm saying is the thing that's worried me about this case all the way along, this is a state issue. Correct. It's a state procedural issue. Whether the testimony comes in or out is all state issue. It goes all the way through the state court and the state court says not a trouble, no problem. Umberger comes out and says no problem. And now what is the federal law that we would have which would somehow say the state had misapplied its own precedent? That's what I'm trying to figure out. I mean, I'm reluctant to make my opponent's argument for her, and I take that question. Frankly, I'm going to ask her. If you want to respond, go ahead. Near as I can tell, Strickland is the only thing that we can point to. That's all I have is Strickland, right? As far as I can tell, yes. All right. And, you know, as long as we're applying Strickland and we're looking at, you know, what reasonable, you know, pinholster requires us to presume the wider range, wide array of reasonable reasons why trial counsel, and in this case post-conviction counsel as well, may have proceeded as they did. It's worth noting that the testimony at issue here is really, in our view, of a different species than the testimony in Southern. What we have here, the actual testimony was that a recommendation that the victim or the alleged victim, I suppose victim we can say now because of the conviction, should participate, and I'm going to quote here, counseling to deal with the issue of sexual abuse, close quote. Now, that is not a diagnosis. The closest case that they can point to in state court is a case called Volinets-Volyshenko. But in that case, what the testimony was, was that the victim participate in counseling that we normally, I'm paraphrasing here, but that we normally require for victims of sexual abuse. The connection there was the victim in this case was required to do something that we require of victims of sexual abuse. Now, that is an implicit diagnosis. Here, counseling to deal with the issue of sexual abuse, I hope that anybody faced with a child alleging sexual abuse recommends that child go through some sort of counseling, regardless of whether that allegation turns out to be founded or not, because clearly there is something going wrong with that child if they're making this allegation. And that is the most that this testimony suggests. So you're just arguing that the probative value of this testimony is not very high, correct? There's two arguments there. And then the second argument is it was in front of a district judge without a jury. So there's three arguments there. One argument is the probative value is not very high, which suggests to me that maybe even on appeal, this would not have presented as good a factual scenario as Souther to get the ruling. And even if an Oregon court had in this case reached the same conclusion of law as Souther had, it might have concluded that it was harmless because of the lack of probative value. Further, given the bench trial, it might have concluded that it was harmless, or trial counsel might have concluded that this judge wasn't going to be motivated by this. But now this federal judge had all of that in front of him, all of those arguments made, and said, distinguishing the cases which you would very easily use, hey, it isn't good enough for this particular case. How do you respond? The trouble that we have with the district court's analysis is primarily the district court appeared to have conflated what we see as two distinct inquiries, the Strickland analysis of trial counsel and the Strickland analysis of post-conviction counsel. And in some ways the district court appeared to view Martinez as licensed to just conduct de novo review of trial counsel's performance. And whether or not the district court judge or this court, viewing this issue for the first time de novo, would conclude that trial counsel performed ineffectively under Strickland, I disagree for the reasons I was discussing earlier. But even if that's so, that isn't the end of the analysis, and the district court seemed to assume that that was. The next question in our view is, is there any reasonable argument, even if me looking at this case on my own view thinks trial counsel performed unreasonably, is there any reasonable argument that trial counsel did perform reasonably? And if so, could post-conviction counsel in this case have acted reasonably in omitting this claim in favor of the other pretty decent claims that he did raise, the kind of claims that would have granted full relief? These were not sort of technical claims about sentencing. They were claims that would have resulted in a reversal of conviction. And so if we're supposed to presume, as this court has required under Harrington v. Richter, and as the district court should have been required to do, that these sorts of decisions are made as a result of considered deliberation rather than as a result of neglect, then we have to presume that this post-conviction counsel looked at this and said, this claim is not as strong as the claims that I'm going to raise, and for that reason I'm going to omit it. Help me keep straight the layers of analysis here. So what I hear you just saying now, just tell me if I'm wrong, is that you're saying the strongest basis for reversing is at the cause part of the Martinez analysis in terms of post-conviction counsel's allegedly deficient performance. You would say that there wasn't deficient performance by post-conviction counsel, and that therefore means what under the Martinez analysis? I don't think that's necessarily the strongest analysis. To me, the strongest answer is this testimony just wasn't that damaging and doesn't closely match Southard, and for that reason it was not a close enough match to require all counsel to conclude that the same objection that prevailed in Southard would prevail here. That's a prejudice analysis, is it not? He's asking you. Right. I just wanted to make sure that what I'm about to answer is not my strongest argument.  But I am happy to answer the question. So, yeah, what I'm saying is that if post-conviction counsel did not perform inadequately, then that fails the cause element of Martinez as Martinez applied Coleman. And if that's true, if post-conviction counsel did not perform deficiently, then this procedurally defaulted claim is procedurally defaulted. Right. Okay. But you made a point, I think it has some significance, that you thought the district court's mistake was to collapse the IAC of trial counsel, because those are, in fact, two distinct analytical steps in the analysis. So all I was trying to get you to tell me, if this is right, is that ultimately we don't need to sort out the IAC of trial counsel question. If any of us thought that that might be a somewhat close question, we could nonetheless say, notwithstanding that, post-conviction counsel was not deficient in not raising this because that's all I was trying to say. What Your Honor just said is correct. What I'm saying is this court need not decide whether or not trial counsel performed inadequately. It would be enough to say that the question is close enough that we cannot say that post-conviction counsel, rather, performed inadequately by omitting this claim, and for that reason this claim is procedurally defaulted and petitioner is not entitled to release. That is a sufficient answer. And that is also a very simple route, in our view, to denial of this claim, an analytically simple answer. I think that's really what the district court should have said. If the court has no questions at this time, I'm happy to save the rest of my time for rebuttal. Very good. Thank you. Let's hear from counsel for petitioner. I please the court. Nell Brown on behalf of petitioner, appellee, Mr. White. Maybe you can just start with the point that your opponent just left off on. I guess that's where I'm sort of seeing trouble with your client's position. Deficiency of post-conviction counsel? Yes. So by the time post-conviction counsel was acting, the Supreme Court of Oregon, or the courts of Oregon, had decided a number of different things. They took this issue very seriously. They found that there really could be no tactical reason not to raise this. They found it basically never harmless in the Clay and Feller cases. That was before post-conviction was acting. They found it harmful whether it was implicit or explicit. This would be an implicit diagnosis because the testimony at issue here is really about the sexual abuse evaluator saying, I believed the victim when she told me without any other evidence that this happened. So it's a dauber-type challenge. Is that accurate, though? I didn't read it to say I believed the witness. I read it to say just the opposite. We couldn't find any evidence. I don't know what to believe, but I'm recommending counseling. I don't think it says that she doesn't know what to believe. It definitely doesn't say that. It simply says that I'm recommending counseling to deal with the issue of sexual abuse. I think the jury would take from that and the way the Oregon courts would look at it. It wasn't a jury trial. That's what I guess I see as maybe a potentially significant. The Oregon courts have not differentiated. They said that this is a harmful error whether it's a bench trial or a jury trial. Well, that's not exactly true. There are several cases where it's been the district court who's made the determination. They've suggested there's no problem because the district court would have simply assessed without all questionable evidence would be disregarded. I'm not sure I understand the question, Your Honor. Well, it isn't true that the Oregon courts have said it's a difference between a jury that it's the same between the jury and the district court. If the district court receives the evidence, then Carfello says 456 P. 2nd at 1001, we can assume the district court, any questionable evidence would have been disregarded. We cannot do that within a jury trial. The Davilia case says that if it's a bench trial, this is harmful unless the court specifically says I didn't consider this. Well, but just a minute. Carfello or Carfarello, which is 456 P. 2nd at 1001, says we can assume that any questionable evidence would be disregarded. That's what it says in front of a district court. The Davilia case distinguished that line of cases. I understand what Davilia said, but I think you're—well, go ahead. If that's your argument, they're the same. I'll listen. Go ahead. Well, more to the point, the district court did disregard it, as I understand. The district court didn't rely upon this. That's not correct. Okay. Can you show me where the district court relied upon this? The district court did not say that it did not rely on it. It didn't say anything in giving the verdict in this case. So there's no record on whether it relied on it or not. The Oregon courts say if the court doesn't explicitly say I did not rely on it, then we presume in this scenario with this type of evidence that the court relied on it. I don't think I answered Judge Watford's question about post-conviction counsel. So at the time post-conviction counsel was acting, the Oregon courts had taken this issue very seriously and had reversed and remanded ordering new trials in dozens of cases. The law on ineffective assistance of counsel was not yet developed. It was developing. The Umberger case had been decided. That is a case that's factually distinguishable from this one. It involved a much earlier trial. It did not address the evidence of the prevailing professional norms like we have here. Had post-conviction counsel done his due diligence and developed evidence of what the prevailing norm was, which he would have been obligated to do in order to winnow this claim, which is not really his role, if he had done that due diligence and understood the professional norm, he would have realized that Umberger was distinguishable. He would not have been deterred by that court of appeals case. Remind me, what year was the post-conviction petition filed? 2012. The case was filed in 2011, but counsel was making his decisions in early 2012. So at that time, the questions that have been posed are would he have decided to raise the other claims in the petition because they were stronger. There's absolutely no way that there was a stronger claim than this one in the post-conviction petition. The claims in that petition were about failure to investigate, failing to call the client's grandmother who was suffering from dementia, and things like that. So it would have been unreasonable, based on what those other claims were and their likelihood that they would never prevail for post-conviction counsel to decide to drop this claim, include those ones instead. So I think that we have a very strong argument that post-conviction counsel was ineffective under Strickland. But at the time, so 2012, I'm just trying to remember the years all these other Oregon Court of Appeals cases were decided. Because here, trial counsel did not make an objection, right? Correct. And Judge Smith said earlier that this is a case that's gone all the way up through the system, and Oregon courts have said no. That's not quite correct, because this was never raised or preserved in the trial court by trial counsel. So there is no state court direct appeal preservation. So it's not raised under direct appeal, and then it's not raised by post-conviction. Right. No, no. But all I was trying to get at is, so in post-conviction counsel's assessment of what claims should I raise, wouldn't he or she – is it a he or a she? It's a he. Wouldn't he have to take into account the fact that this is not a preserved – No, because that's the claim he'd be raising, failure to preserve it. That's the claim at issue. Post-conviction counsel was ineffective for not faulting trial counsel for raising this issue, which was important and which I think the other side in this case has already conceded was prejudicial because in the reply brief in the 28J letter, the state concedes that had trial counsel raised this issue, my client would have prevailed on appeal. That's what I was trying to remember. Because the Oregon courts have said under plain error review that basically even though it wasn't – the objection wasn't raised at trial, the person still is entitled to relief? Yes. Okay. Yes. So I don't think there's a question in this case anymore on the question of prejudice. So the questions are apparently whether post-conviction counsel was ineffective and whether that was prejudicial, and also whether trial counsel was ineffective. And I think the state has conceded that it was prejudicial for trial counsel not to raise this issue. In response to the state's point that the testimony is not that damaging, I would point to the Oregon decision's finding in every situation that it is damaging. In terms of ineffectiveness of trial counsel, I think it's important to understand that the challenge – this case is really about trial counsel's failure to research and understand the law. The challenge that's at issue here is not a Southard challenge. It's a Brown challenge. Brown is like saying in Oregon, this is a Dawbert challenge. It's a challenge under state evidence code to whether evidence should be treated as scientific. And so counsel's failure to raise a Brown or Dawbert-type challenge is what's at issue. It's not about a Southard challenge, right? We're talking trial counsel? Yes, Your Honor. Explain why is that true? Well, I guess I'm trying to figure out how that would be, so I'm asking the same question. How would that be? So the claim at issue here, and this is what – I mean at the time when he should have made the objection, the Court of Appeals had gone the other way. The Court of Appeals had gone the other way, but the Oregon Supreme Court had numerous cases that supported the objection. That's why I'm saying it. You're talking about under Brown. Brown is the Oregon decision that this challenge would have been raised under. Southard was a Brown case. So there wasn't any need to be innovative or clairvoyant or to anticipate what was going to happen down the pike. The challenge was a longstanding challenge under Oregon's Supreme Court precedent, and all counsel here needed to do was his basic duty to research the law. He needed to look at the cases. The Oregon Supreme Court had repeatedly ruled that this type of evidence was inadmissible. The Oregon Court of Appeals kept getting it wrong, and we have attorney affidavits in this case that say all the attorneys – not all the attorneys, competent attorneys who are participating in this professional conversation about this on the local listserv, which – What about State v. Sanchez-Cruz? State v. Sanchez-Cruz is – And what about State v. Wilson? Those two decisions – The common view is, from one of the affidavits, I'll tell you what the attorneys in Oregon – Well, I know what – I know – just a minute. I know what the affidavits of the attorneys are saying. I'm saying I read State v. Sanchez-Cruz. I read State v. Wilson. It doesn't seem to me that if you looked at those cases, this lawyer should have made an objection at all. If you look at Sanchez-Cruz, you would see there's an open question of law on whether in a case like this one, where there's no physical evidence, the evidence should be challenged under basically Brown in the 403 portion of the Brown House. Then I'll have to read that again because I didn't see it that way at all. The view was that Sanchez-Cruz was inconsistent with Brown, Milbrad, Merrington, and other cases that had – sorry, not Merrington. That's a 2003 case. But that Sanchez-Cruz was inconsistent with basically a whole line of Oregon Supreme Court cases. So that was what the attorneys viewed at the time. They saw there was tension between the Court of Appeals' decisions in this area. They thought they were wrongly decided, and they believed that challenges should be raised because eventually the Oregon Supreme Court would take this issue up. I'd point your honors to – the supplemental excerpt of the record is kind of long. I'd point you to pages 11, 12, 14, and 18. It's an affidavit of Matthew McHenry. He's an attorney. He explains that – Before you go through all this affidavit because I've read it, what is there in Strickland that suggests that prevailing norms of practice are more than just guides in determining what is reasonable? Well, what Strickland says is that the proper measure of attorney performance is reasonableness under the prevailing professional norm. I understand that, but when I read Strickland, I don't find anything in there that suggests that the norms of practice are only guides, merely guides at best as to what is reasonable. So if I'm trying to determine whether an attorney has deficient performance, and I'm supposed to give deference to this attorney in tactical decisions that that attorney might make, and I read Strickland, I'm trying to see why I would read Strickland to suggest that that is a breach of duty. Here the breach of duty I'm talking about is the duty to know the law and to understand these tensions. Well, just a minute. That's suggesting that Sanchez, Cruz, and Wilson don't say what I say they say. They say what you say they say, and they're all under Brown. I'm not sure about that. In fact, I think you're wrong, but I'll just take it for granted. Nonetheless, even if I get to the attorney's affidavits and I look at them, they're just basically that this is the prevailing norm, and that's a guide. I can't find if somebody has now committed malpractice or they've done something, a violation of law, because they don't make the objection. I think the key, Your Honor, is they have to have a strategic reason for not making this objection. So if they had a tactical reason not to challenge this evidence, you want this expert to vouch, then if they want that expert vouching testimony, come in. Sorry, if I could. Sure. You're suggesting that if they have two decisions saying it's not worthwhile to make the objection, that they've got to have something outside of that tactical which would say they ought to make it?  by the Oregon Court of Appeals, although the issue in Sanchez-Cruz was an open question. So there was a viable challenge that could have been ruled on in the open question in Sanchez-Cruz that was worth raising. The other issues, which Wilson sounds like it forecloses the claim, there's no way to get to the Oregon Supreme Court, the court that defense attorneys believed was likely to rule in the petitioner's favor, without preserving the issue in the trial court and raising it through the system. So the state has suggested that the attorneys would think, oh, well, why would I raise this if it's going to be denied in the trial and intermediate appellate court? Well, there's cases, and I've cited them from the 2nd, 7th, and 11th circuits, saying there's no reason to be deterred. Where the Oregon Intermediate Appellate Court is getting it wrong routinely, and you can see that inconsistency in the existing law at the time of trial, you raise this issue, you preserve it, and you take it up to the Oregon Supreme Court. Is there any case, federal case, that would suggest that the lawyer should have objected at this particular point in time in the trial? Or am I reviewing all of this under Strickland? Because it is, just a minute, I asked counsel the same question. Seems to me like the Oregon court has had a chance to look at this. We have Umberger, we have this case, which has gone up and come back, and you're suggesting it wasn't exhausted, and I understand, that's why we're there. But what I'm really saying is, Oregon, I don't think Oregon is suggesting that this is a breach of conduct. And I can't find any federal case that suggests it is. So I'm trying to figure out why, then, I think counsel has had bad performance. Let's look at the Lowry case, which has been relied on in other, in similar ways. Lowry v. Lewis? Correct, Your Honor. So in Lowry, it specifically says the attorney there did research. That case had to do with a body cavity search of a number of prisoners, 15 of them who had been expected to do a riot at a prison, and they were all searched. So there were a number of attorneys challenging through motions to suppress this particular search. And in Lowry, the attorney at issue talked to the other attorneys. He did research, and he understood that that motion to suppress had no merit. In contrast here, the motion or the objection to Gibson's testimony, it was meritorious. It was likely to fail in maybe the lower courts, but it had merit, unlike what the counsel was working with in Lowry. Counsel there did his research. So you're suggesting that Lowry would be the great case to suggest, then, that he should have made the objection when, I think Lowry says, the lawyer's conduct has to be evaluated for purposes of performance under Strickland at the time of counsel's conduct. Correct. At the time of counsel's conduct with both Sanchez, Cruz, and Wilson on the books, then I should have said it's a breach of conduct not to object. Yes, Your Honor, and the district court found, and this was reviewed for clear error, that the attorneys on the ground at that time were raising this despite Sanchez, Cruz. Frankly, is that really clear error? I think it's de novo review. Well, the Crittenden case says otherwise. Well, I understand what we've got in Crittenden, but tell me why it's clear error review on what the district court did in this habeas proceeding. What Crittenden says, which is a habeas corpus case like this one, is that when you review a grant of habeas corpus, review of factual findings is for clear error, and that comes from Federal Rule of Civil Procedure 52A6. Thank you. You're welcome. Thank you. All right. Thank you, counsel. You've got some time for rebuttal. Thank you. I think I'll start by making a small quibble with something that Ms. Brown said. We actually have not conceded the prejudice aspect of this claim. In our 28-J letter, we focused our argument, as we did in our brief, on the deficient performance analysis, and we said that a prejudice analysis is sort of beside the point because we're talking about our argument here is about performance. We haven't conceded prejudice because we think that the question is at best close. And in our view, that informs the deficient performance analysis at each stage because when we have a claim that's close, I think that that's a reason to give even more deference to trial counsel, deciding to omit a particular objection or claim in favor of others. And the reason we think it's close is because this testimony, in our view, today in Oregon, it's not clear that this testimony is admissible because it's not a diagnosis. And the closest thing to an implicit diagnosis that Petitioner can cite is this Volinets-Valeshniko case. And that, again, is testimony that goes much farther than the testimony in this case. So we think it would be a very close question whether today in a criminal trial in Oregon this testimony could come in or not. And because that question is close, we don't concede prejudice. And because that question is close, we think that trial counsel and post-conviction counsel did not perform deficiently in concluding that this was not a worthwhile objection or claim to raise. And if the Court has no further questions, we ask you to reverse. Thank you. Okay. Thank you very much. The case just argued is submitted, and we are in recess for today. Adjourned.
judges: N.R. Smith, Watford, R. Nelson